Hart, J.
 

 The determination of this appeal calls for the construction of Sections 5546-1 and 5546-25, General Code, as applied to the use of the equipment and supplies in question in the operations of the appellee in its plant yards.
 

 The pertinent portion of Section 5546-1, General Code, under. which appellee claims exemption, is as follows:
 

 “ ‘Retail sale’ and ‘sales at retail’ include all sales excepting those in which the purpose of the consumer is * * * to use or consume the thing transferred ■ directly in the production of tangible personal property for sale by * # * processing * *
 

 The appellant contends that the tangible personal property in question was not used in the “production
 
 *457
 
 of tangible personal property for sale by * * * processing” ; that the production and processing was completed in tbe crushing and screening process; and that the subsequent operations in which the personal property in question was used constituted a distribution and marketing of the crushed-stone products. The appellee, on the other hand, contends that the storage of the crushed-stone products in its yards and the operations of washing, cleaning, blending and reassembling were still a necessary process in preparing the product for the market, and that such operations constituted a continuation of the production and processing of the materials for sale.
 

 The record shows that slightly less than half of the stone crushed and screened during the period involved was transferred immediately from the screen to trucks and cars for immediate delivery to purchasers. The remainder of the crushed stone, in order to keep the plant in continuous operation, was transferred to storage piles in the yards from immediately adjacent to three-eighths of a mile from the screen. The transportation of this product and its reassembly for delivery to purchasers were accomplished by the use of the tangible personal property above described and now under consideration.
 

 The stone was crushed into various sizes to meet the specifications of purchasers and was used for railroad ballast, road building, building construction, agricultural limestone and other purposes. The purchasers’ specifications frequently called for combinations of certain percentages of grades or sizes of the product, which are made up from the storage piles in the yards. Some of the product is washed in connection with the crushing operation and this product must be drained in the yards before it is ready for delivery. The undisputed testimony is that a storage pile of crushed stone is never sold as a storage pile. There is always
 
 *458
 
 a blending operation necessary. The product is salable as specification material only when it reaches a car for rail shipment, or a customer’s truck.
 

 The appellant in his interpretation of the taxing statute lays much stress on the words “directly” and “processing” as used and applied in the statutory clause “to use or consume the thing transferred directly in the production of tangible personal property for sale by * * * processing * *
 

 If the operations in question constitute “processing,” it would seem to follow that the property in question was used directly for such purpose. The word “process” is defined as.“a mode of treatment of certain materials to produce a given result. It is an act, or a species of acts, performed upon the subject matter to be transformed and reduced to a different state or thing.”
 
 Cochrane
 
 v.
 
 Deener,
 
 94 U. S., 780, 788, 24 L. Ed., 139.
 

 The word “processing” is defined as meaning “ ‘to subject to some special process or treatment. To subject (esp. raw material) to a process of manufacture, development, preparation for the mai’ket.’ ”
 
 Kennedy
 
 v.
 
 Bd. of Assessment and Review,
 
 224 Iowa, 405, 407, 276 N. W., 205.
 

 The evidence as to the operations of the defendant relating to its product after it left the crushing and screening plant shows that it was a continuing process necessary to prepare the product for market. In other words, the material was not ready for sale or delivery until these operations had been completed; and while tax exemption statutes are to be strictly construed (38 Ohio Jurisprudence, 852, Section 114), the general purpose of the exemption was served in this instance in that the property in question was used and consumed in producing and making available for market and sale much more valuable property which
 
 *459
 
 would produce multiplied tax revenues.
 
 Bailey
 
 v.
 
 Evatt, Tax Commr.,
 
 142 Ohio St., 616. See, also, Wes
 
 tern Cartridge Co.
 
 v.
 
 Smith, Coll.,
 
 121 F. (2d), 593.
 

 The question here involved is one of mixed law and fact, subject to determination by the Board of Tax Appeals. On review of the record made before that board, this court cannot say that the decision of the Board of Tax Appeals was unreasonable or unlawful. Therefore, the decision of the Board of Tax Appeals is affirmed.
 

 Decision affirmed.
 

 Weygandt, C. J., Williams and Turnee, JJ., concur.
 

 Matthias, Zimmerman and Bell, JJ., dissent.