FICHTEL & SACHS INDUSTRIES, INC., APPELLEE AND CROSS-APPELLANT,
*v.* WILKINS, TAX COMMR., APPELLANT AND CROSS-APPELLEE.

[Cite as *Fichtel & Sachs Industries, Inc. v. Wilkins,*
108 Ohio St.3d 106, 2006-Ohio-246.]

(No. 2004–1216—Submitted September 28, 2005—Decided February 8, 2006.)

O'CONNOR, J.

{¶ 1} Appellee and cross-appellant, Fichtel & Sachs Industries, Inc. ("F&S"), is an automotive-parts wholesale distributor. It contends in its cross-appeal that its packaging of separate clutch parts into a single box labeled "clutch kit" does not constitute processing and, therefore, its inventory of clutch kits qualifies for the "for storage only" exception of R.C. 5701.08, as broadened by R.C. 5711.22. We agree.

{¶ 2} The Tax Commissioner's appeal in this matter relates to that portion of the Board of Tax Appeals' ("BTA") decision that found that F&S's inventory of clutch parts that had not yet been selected for use in clutch kits was entitled to the for-storage-only exception under R.C. 5711.22(C)(3). We will consider F&S's cross-appeal first.

{¶ 3} F&S, through its Sachs North America division, owns and operates a warehouse in Elyria, where it receives finished clutch parts from suppliers throughout the world. F&S is involved only in the sale and distribution of clutch parts, which are shipped to the Elyria warehouse before being shipped to customers in the United States and Canada. F&S does not have any manufacturing operations in Ohio. For the tax years at issue, 2000 and 2001, F&S listed its inventory as "merchandising," as opposed to "manufacturing," inventory.

{¶ 4} This case concerns the application of the personal-property tax to clutch parts stored in F&S's Elyria warehouse.

{¶ 5} The clutch parts received by F&S at the Elyria warehouse are in turn shipped by F&S to its customers in one of two ways: (1) as parts in a clutch kit or (2) as individual parts. A clutch kit contains the three main components necessary to replace a clutch. For the convenience of its customers F&S puts

these parts into one box. The three clutch parts contained in a clutch kit are a clutch pressure plate, a clutch disk, and a clutch releaser. In addition to the three clutch parts, the clutch kit includes a grease pack and, in some cases, a plastic pilot tool and a pilot bushing. These last three items F&S describes as "throwaway items" that are not part of a clutch, but can be helpful in installing a clutch. The box containing the clutch kit is marked with a stock number, which identifies it as being the clutch parts for a certain make and model of vehicle.

{¶ 6} There are two types of clutch kits in the Elyria warehouse, those that are packaged and shipped to F&S by outside suppliers and those that are boxed by F&S from inventory held at the Elyria warehouse. Only the clutch kits packaged by F&S from the parts inventory held at its Elyria warehouse are at issue.

{¶ 7} To package a clutch kit, the necessary parts are taken from bins storing the individual parts. For instance, when a clutch kit for a 1997 Jeep Cherokee is needed, an employee goes to a bin holding the clutch pressure plates that fit a 1997 Jeep Cherokee and gets a pressure plate, next, a clutch disk that fits a 1997 Jeep Cherokee is taken from a bin holding that part, and finally, a clutch releaser is taken from another bin holding releasers that fit a 1997 Jeep Cherokee. These three clutch parts are then taken to a central area in the warehouse and put into a box, along with the throwaway items, and labeled with a stock number that identifies the box as a clutch kit for a 1997 Jeep Cherokee. After it is packaged, a clutch kit is either shipped directly to a customer or held in storage until an order is received.

{¶ 8} F&S's witness testified that the price for the parts packaged as a clutch kit is the same as the total price for the individual parts.

{¶ 9} When F&S filed its intercounty personal-property tax returns for tax years 2000 and 2001, it claimed a for-storage-only exception for a portion of its inventory. After a field audit, the Tax Commissioner issued amended preliminary assessment certificates denying a portion of F&S's for-storage-only claim on the grounds that a portion of the inventory was held either for processing or was inventory that had been processed at the facility where it was held.

{¶ 10} F&S petitioned the Tax Commissioner for reassessment, asserting that it did not engage in processing when it packaged the clutch parts into a clutch kit and that it was error to deny it the for-storage-only exception for the clutch kits that it had packaged and held in inventory. Furthermore, F&S claimed that it was error to deny it the for-storage-only exception for the clutch parts before they were put into clutch kits.

{¶ 11} The Tax Commissioner found that by combining the clutch parts into one box, F&S was processing the parts and, therefore, was not entitled to the for-storage-only exception for either the clutch kits or the individual clutch parts

being held in inventory. F&S appealed the Tax Commissioner's determination to the BTA.

{¶ 12} On appeal, the BTA held that F&S was not entitled to the for-storage-only exception under R.C. 5701.08, because the parts were shipped to customers. The BTA also affirmed the Tax Commissioner's finding that F&S was engaged in processing when it packaged the clutch parts into clutch kits. However, the BTA reversed the Tax Commissioner and found that "[t]he clutch kit components, prior to identification for processing into a clutch kit, remain merchandise held for storage only. Only after such merchandise is selected for processing does its taxable status change."

{¶ 13} This cause is now before the court upon an appeal and cross-appeal as of right.

{¶ 14} The statutes relevant to this matter are R.C. 5701.08 and 5711.22. R.C. 5701.08 provides:

{¶ 15} "(A) Personal property is 'used' within the meaning of 'used in business' when employed or utilized in connection with ordinary or special operations, when acquired or held as means or instruments for carrying on the business, when kept and maintained as a part of a plant capable of operation, whether actually in operation or not, or when stored or kept on hand as material, parts, products, or merchandise. * * *

{¶ 16} "(B) Merchandise * * * shipped from outside this state and held in this state in a warehouse or a place of storage without further manufacturing or processing and for storage only and for shipment outside this state are not used in business in this state. Such property qualifies for this exception if division (B)(1) or (2) of this section applies:

{¶ 17} "(1) During any period that a person owns such property in this state:

{¶ 18} "(a) The property is to be shipped from a warehouse or place of storage in this state to the owner of the property or persons other than customers at locations outside this state for use, processing, or sale; or

{¶ 19} "(b) The property is located in public or private warehousing facilities in this state which are not subject to the control of or under the supervision of the owner of the property or manned by its employees and from which the property is to be shipped to any person, including a customer, outside this state.

{¶ 20} "(2) During the first twenty-four calendar months that a person first owns such property in this state, the property is held in a warehouse or place of storage in this state located within one mile of the closest boundary of an airport, and is shipped to any person, including a customer, outside this state."

{¶ 21} The parties agree that if not excepted, exempted, or otherwise relieved from taxation, the clutch parts in question would be taxable as personal property

used in business under R.C. 5701.08(A) because they are "stored or kept on hand as material, parts, products, or merchandise." Although R.C. 5701.08(B)(1)(a) and (b) set forth circumstances under which property shipped from outside the state and held in a warehouse may not be considered "for storage only" and not considered "used in business," none of the circumstances required for the applicability of R.C. 5701.08(B)(1)(a) or (b) is present here because the clutch parts are shipped to customers from a warehouse owned and controlled by F&S. The parties also agree that R.C. 5701.08(B)(2) is inapplicable.

{¶ 22} The second relevant statute is R.C. 5711.22, which sets forth how different types of personal property are to be listed for taxation. In this case, the relevant provision is R.C. 5711.22(C)(3), which, if applicable, would have the effect of trumping R.C. 5701.08(A), because the property would be considered "not used in business in this state for property tax purposes."

{¶ 23} R.C. 5711.22 provides:

{¶ 24} "(C)(1) Merchandise * * * shipped from outside this state and held in this state in a warehouse or a place of storage without further manufacturing or processing and for storage only and for shipment outside this state, but that is taxable because it does not qualify as 'not used in business in this state' under division (B)(1) or (2) of section 5701.08 of the Revised Code, shall be listed and assessed at a rate of twenty-five. one hundredths of its true value in money until reduced in accordance with the following schedule:

{¶ 25} " * * *

{¶ 26} "(2) Each year until the year the assessment rate equals zero, the tax commissioner shall determine the assessment rate * * *.

{¶ 27} "(3) Notwithstanding provisions to the contrary in division (B) of section 5701.08 of the Revised Code, during and after the year for which the assessment rate as calculated under this division equals zero, any merchandise * * * shipped from outside this state and held in this state in any warehouse or place of storage, whether public or private, without further manufacturing or processing and for storage only and for shipment outside this state to any person for any purpose is not used in business in this state for property tax purposes."

{¶ 28} There is no dispute in this case that during the relevant tax years the merchandise at issue (1) had an assessment rate of zero, (2) had been shipped from outside the state, and (3) was held in this state in a warehouse for shipment outside the state. Thus, the only determination to be made in determining whether R.C. 5711.22(C)(3) applies is whether there was "further manufacturing or processing" of the parts in question. If there was no further manufacturing or processing, R.C. 5711.22(C)(3) applies and the property in question was "not used in business in this state for property tax purposes."

{¶ 29} Although R.C. 5711.22(C)(3) uses the words "manufacturing or processing," the BTA decided this case solely on the "processing" issue and did not consider whether F&S was a manufacturer. Thus, this case turns on whether F&S's actions in putting several clutch parts in a box and calling it a "clutch kit" constitutes "processing" within the meaning of R.C. 5711.22(C)(3).

{¶ 30} The BTA determined that F&S's activities constituted processing.

{¶ 31} The word "processing" is not defined in the personal-property tax sections of the Revised Code. However, it was defined by the General Assembly in the sales-tax law from 1967 to 1990. Former R.C. 5739.01(S), Am.Sub.S.B. No. 350, 132 Ohio Laws, Part I, 1981, and former R.C. 5739.01(R)(1), Am.H.B. No. 531, 143 Ohio Laws, Part IV, 5575. During that time, R.C. 5739.01 set forth the following definition:

{¶ 32} " 'Manufacturing' or 'processing' means the transformation or conversion of material or things into a different state or form from that in which they originally existed * * * ."

{¶ 33} Although not contained in the personal-property-tax section of the code, the statutory definition of "manufacturing" or "processing" aids our analysis.

{¶ 34} Prior to the enactment of the statutory definition for "processing," the court had in several cases defined the term "processing" in the context of sales-tax cases. In *France Co. v. Evatt* (1944), 143 Ohio St. 455, 458, 28 O.O. 381, 55 N.E.2d 652, for example, the court stated:

{¶ 35} "The word 'processing' is defined as meaning ' "to subject to some special process or treatment. To subject (esp. raw material) to a process of manufacture, development, preparation for the market." ' *Kennedy v. State Bd. of Assessment & Review* [1937], 224 Iowa 405, 407, 276 N.W. 205 [quoting Webster's International Dictionary (2d Ed.1934) 1972]."

{¶ 36} In paragraph two of the syllabus in *Huron Fish Co. v. Glander* (1946), 146 Ohio St. 631, 33 O.O. 106, 67 N.E.2d 546, the court stated, " 'Processing' is the refining, development, preparation or converting of material (especially that in a raw state) into marketable form." In another sales- and use-tax case, *Natl. Tube Co. v. Glander* (1952), 157 Ohio St. 407, 47 O.O. 313, 105 N.E.2d 648, the court stated in paragraph four of the syllabus, "The terms, 'manufacturing' and 'processing,' as used in [the sales- and use-tax sections of the General Code], imply essentially a transformation or conversion of materials or things into a different state or form from that in which they originally existed—the actual operation incident to changing them into marketable products."

{¶ 37} The essence of these definitions for the word "processing," both as interpreted by this court before the General Assembly enacted a definition for sales- and use-tax purposes and under the definition enacted by the General

Assembly for sales- and use-tax purposes, is that there must be some change in the state or form of a product before it can be found to have been subject to processing.

{¶ 38} We see no reason for the word "processing" to have a different interpretation in the personal-property-tax statutes than it has in the sales- and use-tax statutes. In this case, there is no change in the state or form of the clutch parts when they are put into a box for shipping. The clutch parts are shipped to F&S's customers in the same form that they were received from the suppliers. The proper clutch parts are merely taken from the inventory bins and put into a single box to fulfill a customer's order for a clutch kit. Putting several parts in a single box does not in any way change the state or form of any of the parts. Packaging the parts into a clutch kit does not increase the value of the parts.

{¶ 39} The Tax Commissioner apparently would not have considered F&S's actions to be processing if, for example, an F&S customer had sent in individual orders for each of the three parts necessary to replace the clutch for a 1997 Jeep Cherokee and F&S had sent each part to the customer in a separate box, even if F&S had put the three boxes, each containing a single part, into a single shipping box. Likewise, the Tax Commissioner apparently would not have considered it processing if, after receiving a customer's order for the three separate parts, F&S had put the three individual parts into a single shipping box. However, when a customer orders a "clutch kit," and F&S puts the three parts into a single box, the Tax Commissioner contends that the parts have been processed and that this destroys the applicability of R.C. 5711.22(C)(3). That contention exalts form over substance.

{¶ 40} Packaging is not processing. At one time, the court did hold that packaging could be considered a continuation of processing. In its opinion in *Kroger Grocery & Baking Co. v. Glander* (1948), 149 Ohio St. 120, 132, 36 O.O. 471, 77 N.E.2d 921, the court stated, "The wrapping, packing and crating of these goods were distinctly a part of the processing and manufacturing operation." In paragraph two of the syllabus in *Kroger*, the court held that packaging materials consumed in preparing goods for market were within the sales-tax exceptions for processing and manufacturing. However, that concept has since been disavowed by the court. In *Gen. Mills, Inc. v. Limbach* (1988), 35 Ohio St.3d 256, 257, 520 N.E.2d 218, the court stated, "We have implicitly overruled paragraph two of the syllabus in *Kroger* in later decisions." The court then stated that, in the final analysis, packaging materials are exempt only pursuant to the exemption for packaging materials. Id. at 258, 520 N.E.2d 218. The court's rationale for its conclusion was that "[t]he product has been changed into its final state or form

prior to packaging. Therefore, packaging occurs after the end of manufacturing." Id.

{¶ 41} Thus, any contention that packaging of the clutch parts is a continuation of processing is not valid. Furthermore, since packaging does not change the state or form of the items being packaged, it is not processing.

{¶ 42} Because we decide that F&S's packaging is not processing, the Tax Commissioner's appeal concerning inventory being held prior to processing (i.e., clutch parts that had not yet been selected for clutch kits) is rendered moot.

{¶ 43} Accordingly, we reverse as unreasonable and unlawful that portion of the BTA's decision that determined that F&S's packaging of clutch parts into clutch kits constituted processing. We remand this matter to the BTA for action consistent with this opinion.

> Decision affirmed in part
> and reversed in part,
> and cause remanded.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'DONNELL and LANZINGER, JJ., concur.

---

Baker & Hostetler, L.L.P., Edward J. Bernert, and Michael D. Dortch; and Pillsbury Winthrop Shaw Pittman, L.L.P., and Richard E. Nielsen, for appellee and cross-appellant.

Jim Petro, Attorney General, and Duane M. White, Assistant Attorney General, for appellant and cross-appellee.

Vorys, Sater, Seymour & Pease, L.L.P., Raymond D. Anderson, and Kevin M. Czerwonka, in support of appellee and cross-appellant for amici curiae, Ohio Council of Retail Merchants and Ohio Chamber of Commerce.