**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Adams v. Testa,* **Slip Opinion No. 2017-Ohio-8853.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-8853

ADAMS ET AL., APPELLANTS, *v*. TESTA, TAX COMMR., APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Adams v. Testa,* Slip Opinion No. 2017-Ohio-8853.]**

*Taxation—Real-property valuation—R.C. 5717.02—Journal entry incorporating current agricultural-use values ("CAUVs") is a final determination subject to appeal to Board of Tax Appeals—CAUV journal entry is not a rule that needed to be promulgated in accordance with R.C. Chapter 119—Board of Tax Appeals' decision dismissing landowners' appeal vacated and cause remanded.*

(No. 2016-0256—Submitted June 6, 2017—Decided December 7, 2017.)

APPEAL from the Board of Tax Appeals, No. 2015-1090.

_____

**DEWINE, J.**

{¶ 1} Each year, to enable county auditors to determine the value of farmland for tax purposes, the Ohio Tax Commissioner adopts a journal entry that sets forth a table assigning per-acre values—current agricultural-use values

("CAUVs")—to different types of agricultural land. This case presents the question whether a landowner may appeal from that journal entry.

**{¶ 2}** A group of landowners who believe that some of their land is being overvalued sought to challenge the tax commissioner's journal entry in a proceeding before the Board of Tax Appeals ("BTA"). The BTA dismissed the appeal, concluding that it did not have jurisdiction under R.C. 5717.02 to consider an appeal of the journal entry, because the journal entry is not a "final determination." The BTA also rejected an attempt by the landowners to challenge the journal entry as a "rule" that either is unreasonable or had been improperly issued; the entry, it concluded, is not a rule.

**{¶ 3}** The landowners appealed the BTA's decision to this court. We agree with the BTA that the journal entry is not a rule and thus not subject to challenge under statutory provisions dealing with rulemaking. But we conclude that the journal entry is a "final determination," which the BTA has jurisdiction to review. Thus, we reinstate the appeal.

## I. Current agricultural-use values (CAUVs)

**{¶ 4}** In 1974, the Ohio Constitution was amended to allow "land devoted exclusively to agricultural use [to] be valued for real property tax purposes at the current value such land has for such agricultural use." Ohio Constitution, Article II, Section 36. As a consequence, agricultural land is taxed based on its agricultural-income potential as opposed to its fair market value. To accomplish this valuation, the tax commissioner is required to adopt rules to determine the "current agricultural use value" of such land. R.C. 5715.01(A). The rules are to take into account soil productivity, crop-price patterns, capitalization rates, farmland market values, and other pertinent factors. *Id.*

**{¶ 5}** Pursuant to this directive, the tax commissioner adopted rules setting forth a method by which the commissioner, in consultation with an agricultural advisory committee, sets CAUVs on an annual basis. *See* Ohio Adm.Code 5703-

2

25-30 through 5703-25-36. The CAUVs are finalized by the tax commissioner's adoption of an administrative journal entry. Ohio Adm.Code 5703-25-31(D). The county auditors then use the CAUVs "as prima-facie correct valuation for parcels or tracts of land devoted exclusively to agricultural use." Ohio Adm.Code 5703-25-31(E).

{¶ 6} Included in the definition of agricultural land is land upon which timber is grown that is part of or next to farmland. R.C. 5713.30. To value such woodland, the tax commissioner calculates a cost to clear the land to convert it to cropland. *See* Ohio Adm.Code 5703-25-33(M)(4). The clearing cost is then subtracted from the cropland value to determine the woodland value. *Id.*

{¶ 7} The CAUVs are set forth in a table that is promulgated by the tax commissioner each year. Ohio Adm.Code 5703-25-31(D). The table establishes a per-acre CAUV for both cropland and woodland for each soil type in Ohio.[1] In 2015, the tax commissioner issued an administrative journal entry that updated the CAUVs for the 24 counties in which the county auditor was required to perform a reappraisal or update of tax values for that year. The table used a woodland-clearing cost of $1,000 per acre. The other 64 counties were instructed to continue using the values set in 2013 and 2014, which used a $500-per-acre clearing cost.

## II. The proceedings below

{¶ 8} In August 2015, the landowners appealed the tax commissioner's CAUV journal entry to the BTA. Their principal complaint was that when the commissioner set the $1,000-per-acre woodland-clearing cost for 2015 and maintained the 2013 and 2014 $500-per-acre cost, he ignored evidence showing that the clearing cost for woodland averaged $3,350 per acre. Thus, the landowners claimed that their woodland was being overvalued. The landowners later filed an amended notice of appeal, alleging that the entry is a rule. The amended notice

---

[1] As an example, the 2017 CAUV table may be viewed at http://www.tax.ohio.gov/real_property/cauv.aspx (accessed Nov. 1, 2017).

asserted that the entry is invalid as a rule because the tax commissioner failed to comply with the rulemaking requirements of R.C. Chapter 119 and, further, that the rule is unreasonable under the rule-review provisions of R.C. 5703.14.

{¶ 9} The proceedings before the BTA were somewhat convoluted. The BTA issued five separate orders that culminated with a February 1, 2016 order dismissing the case. Because one of the issues raised by the tax commissioner in the matter before us is the timeliness of the landowners' appeal to this court, we discuss each of the BTA's orders.

{¶ 10} In the first decision issued by the BTA—dated November 9, 2015— a BTA hearing examiner concluded that the BTA did not have jurisdiction over the appeal of the CAUV journal entry. The hearing examiner reasoned that R.C. 5717.02 allows an appeal to the BTA only from a "final determination" of the tax commissioner and not from an appeal of an administrative journal entry. And with regard to the amended notice of appeal, the hearing examiner concluded that the BTA had jurisdiction under R.C. 5703.02(A)(5) to review the rules that established the method for determining the CAUVs—Ohio Adm.Code 5703-25-30 through 5703-25-36. But the examiner found that the journal entry itself is not a rule so the entry is not subject to review in a rule-based challenge. On December 9, 2015, the BTA denied the landowners' motion for reconsideration.

{¶ 11} The landowners sought to amend their notice of appeal a second time, again challenging the woodland-clearing costs used by the tax commissioner in the CAUV journal entry. In an order issued December 11, 2015, the BTA denied the motion to amend, reiterating its prior holding that the BTA lacked jurisdiction to consider a challenge to the administrative journal entry issued by the tax commissioner.

{¶ 12} The landowners filed a second motion for leave to amend their notice of appeal. The landowners noted that they were dropping their R.C. 5703.14 rule-

review claims because these matters were being pursued in a separate appeal.[2]  As a result, the BTA on December 22, 2015, issued an order directing the landowners to show cause why their appeal should not be dismissed.  The BTA explained that the landowners continue to seek relief from the tax commissioner's CAUV journal entry despite the BTA's multiple pronouncements that it lacked jurisdiction to provide such relief.

{¶ 13} In response to the show-cause order, the landowners acknowledged that they were not pursuing the rule review allowed by the BTA but maintained that the BTA had jurisdiction under R.C. 5717.02.  On February 1, 2016, the BTA dismissed the appeal for lack of jurisdiction.

{¶ 14} The landowners—on February 17, 2016—filed a notice of appeal in this court from the five orders issued by the BTA.  They challenge the BTA's conclusions that it did not have jurisdiction under R.C. 5717.02 and that the CAUV journal entry is not a rule.

### III.  The landowners' appeal of the BTA decision was timely

{¶ 15} As an initial matter, the tax commissioner challenges the timeliness of the landowners' appeal to this court.  R.C. 5717.04 provides that appeals from decisions of the BTA shall be filed "within thirty days after the date of the entry of the decision of the board on the journal of its proceedings."  The tax commissioner argues that the landowners were required to appeal within 30 days of the BTA's December 9, 2015 decision because that decision dismissed the R.C. 5717.02 appeal and stated that the landowners could not challenge the CAUV journal entry under R.C. Chapter 119.

{¶ 16} The problem with the tax commissioner's argument is that the December 9 order (and the other three orders issued prior to February 1, 2016) were not final, appealable orders because the orders did not resolve all the landowners'

---

[2] The claims under R.C. 5703.14 are the subject of a companion case to this one, *Adams v. Testa*, __ Ohio St.3d __, 2017-Ohio-8854, __ N.E.3d __, also decided today.

claims. *See* R.C. 2505.02(B). The December 9 order makes this clear. The BTA denied the landowners' motion to reconsider its decision that it did not have jurisdiction to consider the appeal under R.C. 5717.02 and went on to state that "the instant appeal will proceed as a request for rule review, pursuant to R.C. 5703.02(5), as previously determined." BTA No. 2015-1090, 2015 Ohio Tax LEXIS 4201, *2 (Dec. 9, 2015). Not until the BTA issued its February 1, 2016 order, which dismissed the entire appeal, did the December 9, 2015 order become final. We therefore conclude that the landowners' appeal was timely filed.

### IV. The BTA's jurisdiction to hear an appeal under R.C. 5717.02(A)

{¶ 17} The BTA dismissed the landowners' appeal of the CAUV journal entry, because it concluded that the entry was not a "final determination" under R.C. 5717.02. The statute prescribes what may be appealed to the BTA and who may bring the appeal:

> Except as otherwise provided by law, appeals from final determinations by the tax commissioner of any preliminary, amended, or final tax assessments, reassessments, valuations, determinations, findings, computations, or orders made by the commissioner may be taken to the board of tax appeals by the taxpayer, by the person to whom notice of the tax assessment, reassessment, valuation, determination, finding, computation, or order by the commissioner is required by law to be given, by the director of budget and management if the revenues affected by that decision would accrue primarily to the state treasury, or by the county auditors of the counties to the undivided general tax funds of which the revenues affected by that decision would primarily accrue.

R.C. 5717.02(A).

**{¶ 18}** Thus, to be appealable under R.C. 5717.02(A), the CAUV journal entry had to be (1) an assessment, reassessment, valuation, determination, finding, computation, or order made by the tax commissioner; (2) a final determination; and (3) appealed by the taxpayer, the person to whom notice was required to be given, the director of budget and management, or a county auditor. We consider each requirement in turn.

*A.     The CAUV journal entry is a determination made by the tax commissioner*

**{¶ 19}** There can be little dispute that the CAUV journal entry is a "determination[] * * * made by the commissioner." R.C. 5715.01(A) tasks the tax commissioner with promulgating rules "for the determination of the current agricultural use value of land." These rules, Ohio Adm.Code 5703-25-30 through 5703-25-36, provide the process by which the values are determined. The rules explicitly refer to the result of this process as a determination:

> (A) An agricultural advisory committee shall be created to annually advise the tax commissioner on economic, technological and other current developments that might be considered in the *determination* of agricultural land values as defined in these rules.
> * * *
> * * *
>
> (C) The commissioner may consider such recommendations in making the annual *determination*.

(Emphasis added.) Ohio Adm.Code 5703-25-32. "A *determination* shall be made of the percentage of each rotation acre devoted to each crop for land capability classes I through IV. Such *determination* shall be made separately for [specific soil regions]." (Emphasis added.) Ohio Adm.Code 5703-25-33(G).

**{¶ 20}** Further, the rules provide that the determination is made by the tax commissioner. After consulting with an agricultural advisory committee, the commissioner makes the annual determination "in consideration of the commissioner's responsibility to equalize all real property taxable values." Ohio Adm.Code 5702-25-32(C). Thus, the CAUV journal entry is a "determination[] * * * made by the commissioner."

*B. The determination made in the CAUV journal entry is a final determination*

**{¶ 21}** Rather than challenge whether the CAUV journal entry is a determination, the tax commissioner focuses his argument on whether it is a "final determination." The BTA premised its dismissal of the landowners' appeal on the tax commissioner's assertion that he had " 'not issued a final determination' with regard to the appellant taxpayers." BTA No. 2015-1090, 2015 Ohio Tax LEXIS 4018, *1 (Nov. 9, 2015).

**{¶ 22}** On its face, there seems little question that the determination made in the CAUV journal entry is final. There are two senses in which the word "final" is commonly used. The first is "coming at the end"—for example, "the Reds were down to their final at-bat." *See Webster's Third New International Dictionary* 851 (2002). The second is "not subject to revision"—for example, "that's my decision, and it is final." *See id.* The tax commissioner's journal entry qualifies as final in both senses of the word.

**{¶ 23}** Pursuant to the administrative rules, the tax commissioner annually consults with the agricultural advisory committee and then adopts a "proposed entry setting forth the necessary modifications and values to be used in establishing the current agricultural value of land." Ohio Adm.Code 5703-25-31(D). The commissioner must then provide public notice of the proposed entry and hold a public hearing on the proposed entry. *Id.* After the hearing, the commissioner adopts the entry. *Id.* Thus, the journal entry is the final step in the process of establishing the annual CAUV values.

**{¶ 24}** The CAUV journal entry is also final in the sense that it is not preliminary or tentative. The rules make clear that unlike the proposed entry, which is subject to the public notice and hearing process, the journal entry, once adopted by the tax commissioner, cannot be revised and shall be used in the applicable "counties for the next ensuing three tax years." *Id.*

**{¶ 25}** It follows, then, that under any plain reading of the English language, the tax commissioner made a final determination. The CAUV journal entry is a determination, and that determination is final.

**{¶ 26}** The tax commissioner urges us to look beyond the ordinary meaning of "final determination"; he advocates that the phrase is a term of art that describes the result of an adjudicative review. In support, he points to cases in which we determined that there was no final determination under R.C. 5717.02. But rather than standing for the proposition that "final determination" in R.C. 5717.02 refers only to an act taken by the commissioner after an adjudicative review, the cases underscore our understanding of the plain meaning of the phrase: appeals may be brought only from determinations that are final.

**{¶ 27}** For example, in *Makowski v. Limbach*, 62 Ohio St.3d 412, 583 N.E.2d 1302 (1992), a county auditor appealed the tax commissioner's certification of estimated library-fund payments due to the county. We concluded that the certification was not a final determination from which an appeal could be taken under R.C. 5717.02 because "the commissioner [did] not adjudicate any matter in this process; she perform[ed] ministerial functions by applying known numbers to estimated income tax collections." *Id.* at 415. Put another way, in certifying the estimated payments, the tax commissioner made no determination—she simply carried out a ministerial act.

**{¶ 28}** The tax commissioner argues that similar to the certification at issue in *Makowski*, the CAUV journal entry is not appealable because it was "merely the ministerial act of publishing the CAUV table in [the] journal." But this argument

overlooks the discretionary nature of the tax commissioner's mandate: "[T]he commissioner is not bound by [the recommendations of the agricultural advisory committee] and may, at the commissioner's option, either accept the recommendations in full or part, or reject them in total." Ohio Adm.Code 5703-25-32(C). Indeed, in an earlier section of his brief, the tax commissioner acknowledges that "[d]eveloping CAUV values involves substantial discretion by the Tax Commissioner." Thus, in contrast to the certification at issue in *Makowski*, the tax commissioner's promulgation of CAUVs is far from ministerial. The entry constitutes the final step in incorporating the CAUVs that were determined under the tax commissioner's discretionary authority.

{¶ 29} The tax commissioner relies upon two other cases in support of his argument that a "final determination" must be an adjudicative decision. In *Cooke v. Kinney*, 65 Ohio St.2d 7, 417 N.E.2d 106 (1981), the Independence City Council attempted to appeal the tax commissioner's review of the Cuyahoga County auditor's triennial real-property assessment. The statute at issue, R.C. 5715.24, requires the tax commissioner to determine whether the property in counties completing a sexennial reappraisal or triennial update had been assessed as required by law. This court concluded that the commissioner's review was not a final determination appealable under R.C. 5717.02(A) because "[t]he act of the commissioner merely authorizes the county auditor to use the approved abstract to calculate real property taxes." *Cooke* at 8. We explained that once the rates were calculated, a taxpayer who wished to challenge his individual valuation could do so under the procedures established in R.C. 5715.19. *Id.* at 9. Thus, because tax valuations had not been finally calculated and the Revised Code provided a method to challenge the valuations once they had been calculated, the commissioner's review was not a final determination within the meaning of the statute. Similarly, in *Michelin Tire Corp. v. Kosydar*, 38 Ohio St.2d 254, 256-257, 313 N.E.2d 394 (1974), we concluded that a preliminary tax assessment that had become final by

operation of law was not a final determination for purposes of R.C. 5717.02 when the taxpayer had failed to avail itself of the opportunity to review the assessment provided by R.C. 5711.31.

{¶ 30} Contrary to the tax commissioner's suggestion, *Cooke* and *Michelin Tire* do not stand for the proposition that a final determination may exist only when "contested adjudicative action" has taken place. Rather, the two decisions are in accord with the ordinary meaning of the word "final." In both cases, the tax commissioner's decision was not final because there were other steps that had yet to be taken or that could have been taken—in *Cooke*, the calculation of tax rates and valuations and the R.C. 5715.19 appeal and in *Michelin Tire*, the R.C. 5711.31 appeal that the taxpayer had neglected to file.

{¶ 31} In this case, unlike *Cooke* and *Michelin Tire*, no other review of the CAUV determination was available to the landowners. Once a public hearing is held on the tax commissioner's proposed entry setting forth the CAUV values, he adopts it for the county auditors' use. Ohio Adm.Code 5703-25-31(D). There is no provision for further modification or review of the CAUVs adopted by the commissioner; his determination is final.

{¶ 32} We conclude that nothing in the plain language of the statute or in our case law limits "final determination[s]" to those acts resulting from an adjudication. The determination of CAUVs is final when, pursuant to rule, the tax commissioner adopts the journal entry. Thus, the CAUV journal entry is a final determination subject to review under R.C. 5717.02.

*C. The landowners have standing to challenge the CAUV journal entry*

{¶ 33} The tax commissioner also argues that because he was not required to give notice of the CAUV journal entry to the landowners, they are not included in the group of parties that are permitted to challenge it. But this argument ignores the plain terms of the statute. Under R.C. 5717.02(A), appeals from the tax commissioner's final determinations "may be taken to the board of tax appeals by

the taxpayer." There is no question that the landowners—all of whom own land subject to the CAUV journal entry—are taxpayers. Thus, they have standing under R.C. 5717.02 to challenge the determination of CAUVs.

{¶ 34} We therefore conclude that the BTA erred when it dismissed the landowners' complaint for lack of jurisdiction under R.C. 5717.02.

## V. The CAUV journal entry is not a rule

{¶ 35} The landowners also challenge the BTA's conclusion that the CAUV journal entry is not a rule that needed to be promulgated pursuant to R.C. Chapter 119. R.C. 119.02 requires that "[e]very agency authorized by law to adopt, amend, or rescind rules shall comply with the procedure prescribed in sections 119.01 to 119.13, inclusive, of the Revised Code, for the adoption, amendment, or rescission of rules." The landowners argue that the CAUV journal entry should be vacated because the tax commissioner adopted it without complying with R.C. Chapter 119.

{¶ 36} The definition of "rule" set forth by the statute is of only limited help in deciding whether the journal entry here is a rule. "Rule" is circularly defined as "any rule, regulation, or standard, having a general and uniform operation, adopted, promulgated, and enforced by any agency under the authority of the laws governing such agency, and includes any appendix to a rule." R.C. 119.01(C).

{¶ 37} In applying this definition, we have drawn a distinction between an administrative action that establishes a policy or standard as opposed to an action that is merely the implementation or interpretation of a rule already in existence.

{¶ 38} For example, in *Ohio Nurses Assn., Inc. v. State Bd. of Nursing Edn. & Nurse Registration*, 44 Ohio St.3d 73, 540 N.E.2d 1354 (1989), we determined that a position paper adopted by the State Board of Nursing Education and Nurse Registration that permitted licensed practical nurses to administer intravenous fluids constituted a rule that had to be promulgated according to R.C. 119.01 et seq. We explained that if the position paper had "merely * * * interpret[ed] an extant statute or rule," it would not be a rule. *Id.* at 76. But because it had "establish[ed]

a new rule, standard or regulation," it needed to be promulgated pursuant to R.C. Chapter 119. *Id.*

{¶ 39} Likewise, in *Progressive Plastics, Inc. v. Testa*, 133 Ohio St.3d 490, 2012-Ohio-4759, 979 N.E.2d 280, we concluded that the tax commissioner's decision to value inventory by a different accounting method—first-in-first-out, as opposed to last-in-last-out—was a rule that needed to be adopted according to the requirements of R.C. Chapter 119. In other words, if a pronouncement "prescribes a legal standard that did not previously exist," it is a rule that must be promulgated according to the procedures set forth in R.C. Chapter 119. *Fairfield Cty. Bd. of Commrs. v. Nally*, 143 Ohio St.3d 93, 2015-Ohio-991, 34 N.E.3d 873, ¶ 29.

{¶ 40} In contrast, in *State ex rel. Saunders v. Indus. Comm.*, 101 Ohio St.3d 125, 2004-Ohio-339, 802 N.E.2d 650, we concluded that a memo contained within a worker's compensation hearing-officer manual was not a rule. We identified "[t]he pivotal issue" in the determination as whether the memo "enlarges the scope of the rule or statute from which it derives rather than simply interprets it." *Id.* at ¶ 27. Because the memo simply interpreted existing statutes and case law, it did not constitute a rule. *Id.* at ¶ 42.

{¶ 41} The journal entry here establishes no new standard or method. Instead, the CAUVs incorporated by the journal entry result from the application of already promulgated rules—Ohio Adm.Code 5703-25-30 through 5703-25-36. The entry does not alter the rules' methodology for deriving CAUVs, nor does it impose new requirements in performing the valuations. Thus, the journal entry is not a rule subject to R.C. Chapter 119 requirements.

## VI. Conclusion

{¶ 42} Under the plain language of R.C. 5717.02, the journal entry incorporating the CAUVs is a final determination subject to appeal to the BTA by the landowners. But the journal entry is not a rule that needed to be promulgated

in accordance with R.C. Chapter 119. We reverse the BTA's dismissal of the appeal and remand the cause for further proceedings.

Decision vacated

and cause remanded.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

FISCHER, J., concurs in judgment only.

————————————

Van Kley & Walker, L.L.C., and Jack A. Van Kley, for appellants.

Michael DeWine, Attorney General, and Daniel W. Fausey and Daniel G. Kim, Assistant Attorneys General, for appellee.

Chad A. Endsley, Leah F. Curtis, and Amy M. Milam, urging reversal for amicus curiae, Ohio Farm Bureau Federation.

————————————