**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Johnson v. McClain*, **Slip Opinion No. 2021-Ohio-1664.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-1664

JOHNSON, APPELLANT, *v*. MCCLAIN, TAX COMMR., APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Johnson v. McClain*, Slip Opinion No. 2021-Ohio-1664.]**

*Taxation—Property tax—Current agricultural use valuation—Property owner failed to prove that tax commissioner abused his discretion in adopting land-valuation table—Decision of Board of Tax Appeals affirmed.*

(No. 2020-0472—Submitted January 26, 2021—Decided May 18, 2021.)

APPEAL from the Board of Tax Appeals, No. 2016-814.

_____

**Per Curiam.**

{¶ 1} Appellant, William S. Johnson, appeals a decision of the Board of Tax Appeals ("BTA") affirming the June 22, 2016 journal entry issued by appellee, Ohio Tax Commissioner Jeffrey McClain. That journal entry adopted a per-acre valuation table for use by the county auditors in assessing land that qualifies for "current agricultural use valuation" ("CAUV"). The BTA determined that Johnson

failed to prove that the tax commissioner abused his discretion in adopting the valuation table. We agree and therefore affirm the BTA's decision.

## I. COURSE OF PROCEEDINGS

{¶ 2} The journal entry at issue here prescribes the basis for property-tax valuation of CAUV-qualifying farmland in 23 Ohio counties that conducted either a reappraisal or a valuation update for tax year 2016. The entry adopts a 58-page unit-value table that lists soil types along with (1) ratings of each soil type as to several characteristics, including natural drainage, and (2) per-acre values for each soil type based on potential income for crops grown in that soil. Each county auditor consults the unit-value table when calculating the value of farmland in his or her county and applies the per-acre values from the table to the farmland using soil maps of the farms in the county. Ohio Adm.Code 5703-25-34(B).

{¶ 3} Johnson owns a farm in Clark County, which is one of the counties subject to the tax commissioner's June 2016 journal entry. In *Adams v. Testa*, 152 Ohio St.3d 207, 2017-Ohio-8853, 94 N.E.3d 539, ¶ 33, we held that a CAUV journal entry is a "final determination" that is appealable to the BTA pursuant to R.C. 5717.02 and that a taxpayer who is "subject to" the entry has standing to appeal it to the BTA. Johnson appealed the tax commissioner's journal entry to the BTA, primarily arguing that the unit-value table does not differentiate certain soil types based on whether they are drained or undrained.

{¶ 4} In its decision, the BTA summarized the structure of the CAUV program and determined that because "th[e] appeal concerns the propriety of the commissioner's actions in adopting the tables, their application to a particular property (i.e., Mr. Johnson's farm) is not before us today." BTA No. 2016-814, 2020 WL 1274335, *2 (Mar. 6, 2020). The BTA then reviewed the tax commissioner's decision adopting the CAUV table to determine whether the commissioner abused his discretion—that is, whether the decision was unreasonable, arbitrary, or unconscionable. *Id*. at *4. Specifically, it asked

"whether the commissioner abused his discretion by adopting a CAUV table without expressly setting forth a separate rate for somewhat poorly drained, poorly drained, or very poorly drained soils that lack artificial drainage." *Id.*

{¶ 5} For three reasons, the BTA found no abuse of discretion. First, the administrative code calls for valuation based on normal management practices in the area, not on the " 'management ability or decisions of an individual owner or operator.' " *Id.* at *4, quoting Ohio Adm.Code 5703-25-33(B). Second, Johnson failed to rebut testimony at the BTA hearing establishing that for purposes of developing the unit-value table, the yields for all soil types may include data from both drained and undrained soil. *Id.* Finally, because the typical management of certain soil types includes artificial drainage, even if the commissioner did not consider data regarding lack of artificial drainage in making his determination, Johnson did not show an arbitrary or unconscionable attitude on the commissioner's part. *Id.* at *4-5.

{¶ 6} Johnson appealed to this court as of right pursuant to R.C. 5717.04.

## II. ANALYSIS

### A. Agricultural-use valuation

{¶ 7} Generally, Ohio taxes real estate by determining, as a first step, the property's fair market value at its highest and best use; such a value is the "true value" as that term is used in R.C. 5713.01(B). " '[T]he value or true value in money of real property' refers to 'the amount for which that property would sell on the open market by a willing seller to a willing buyer * * *, i.e., the sales price.' " (Brackets and ellipsis added in *Terraza 8, L.L.C.*) *Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 527, 2017-Ohio-4415, 83 N.E.3d 916, ¶ 8-9, quoting *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 175 Ohio St. 410, 412, 195 N.E.2d 908 (1964); *see also Rite Aid of Ohio, Inc. v. Washington Cty. Bd. of Revision*, 146 Ohio St.3d 173, 2016-Ohio-371, 54 N.E.3d 1177, ¶ 34. But under Article II, Section 36 of the Ohio Constitution and the statutes implementing that

provision, property that qualifies for CAUV treatment is assessed not on the basis of its highest and best use, but on the basis of its "current agricultural use"—a valuation that typically is lower than a highest-and-best-use valuation for the same land. *Johnson v. Clark Cty. Bd. of Revision*, 155 Ohio St.3d 264, 2018-Ohio-4390, 120 N.E.3d 823, ¶ 10-12. This tax break is available to owners who prove that their property is "devoted exclusively to agricultural use," R.C. 5713.30(A)(1), 5713.31, and 5715.01(A).

{¶ 8} The tax commissioner prescribes the basis for determining CAUV pursuant to administrative rules promulgated under R.C. 5715.01.[1] Ohio Adm.Code Chapter 5703-25, Sections 30 through 36, govern the CAUV process and Ohio Adm.Code 5703-25-33(A) prescribes a potential-income approach for developing CAUV tables. The prescribed approach relies on determining "typical net income before real property and income taxes from agricultural products assuming typical management, cropping and land use patterns and yields for a given type of soil." To ensure uniformity, the commissioner must annually "adopt a proposed entry setting forth the necessary modifications and values to be used in establishing the current agricultural use value of land in counties completing a sexennial reappraisal or [completing a triennial update]." Ohio Adm.Code 5703-25-31(D).

{¶ 9} In preparing the journal entry, the commissioner must consult with an "agricultural advisory committee," *id.*, that consists of representatives from "farm related organizations and public agencies having knowledge in this field," Ohio Adm.Code 5703-25-32(A). Through the journal entry, the commissioner adopts a

---

1. Ohio's 2017 budget bill, 2017 Am.Sub.H.B. No. 49, amended R.C. 5715.01 to add specific requirements concerning the CAUV methodology. Those amendments were not in effect in June 2016 when the tax commissioner adopted and Johnson contested the unit-value table at issue here. Accordingly, we refer in this opinion to the version of R.C. 5715.01 in effect for tax year 2016 as "former R.C. 5715.01."

CAUV table listing soil types and the per-acre values for each soil type. Ohio Adm.Code 5703-25-33. We have explained that process as follows:

> The commissioner compiles this table by first calculating the typical net income from agricultural products for each soil type. * * * Next, the commissioner capitalizes the incomes expected to be derived from each soil type by a rate that he has previously determined. Finally, he lists the unit values per acre so determined in the table and distributes the table to the auditors.

*Renner v. Tuscarawas Cty. Bd. of Revision*, 59 Ohio St.3d 142, 145, 572 N.E.2d 56 (1991).

{¶ 10} When the commissioner lists soil types in the unit-value table, he or she relies on "Bulletin 685" for guidance. The bulletin is a 1980s publication reflecting the input of the Ohio State University's Cooperative Extension Service, the Ohio State University's Ohio Agricultural Research and Development Center, the Division of Soil and Water Conservation of the Ohio Department of Natural Resources, and the United States Department of Agriculture's ("USDA") Soil Conservation Service (now known as the National Resource Conservation Service). When the USDA adds soil types and data to its taxonomy of soils, those findings are presented to the tax commissioner's agricultural advisory committee for inclusion in the unit-value tables.

{¶ 11} Using the CAUV journal entry, a county auditor determines the agricultural-use value of each qualifying property in his or her county, and those valuations "will be accepted as prima-facie correct valuation for parcels or tracts of land devoted exclusively to agricultural use where the parcel and tract of land has a 'true' or 'market' value reflecting a higher and better use than agricultural [use]." Ohio Adm.Code 5703-25-31(E).

### B. Basis of the controversy

{¶ 12} Through four claims of error, Johnson presents a narrow challenge to the CAUV unit-value table adopted in the tax commissioner's June 2016 journal entry. Specifically, he faults the table for not listing separate values for drained and undrained Crosby, Kokomo, and Patton soils, given that it does list separate values for drained and undrained Adrian, Carlisle, and Linwood soils. By arguing for a lower unit value for the Crosby, Kokomo, and Patton soil types, which are present but undrained on his farmland, Johnson seeks to reduce the prima facie agricultural-use value of the land, which would reduce his property-tax liability.

### C. Ohio Adm.Code 5703-25-34(E) furnishes no basis for challenging the CAUV journal entry

{¶ 13} Johnson predicates his first claim of error on Ohio Adm.Code 5703-25-34(E), which requires a county auditor, "[i]f a particular soil type is not included in the 'current agricultural use value of land table or tables' prescribed by the tax commissioner for the given year," to "contact the tax commissioner to secure the per acre unit value for the soil type." The commissioner "shall then compute a use value [for that soil type] * * *." *Id.*

{¶ 14} Johnson argues that this provision compels the tax commissioner to recognize undrained versions of specified soil types on the unit-value table. By challenging the BTA's determination that Ohio Adm.Code 5703-25-34(E) does not apply to his challenge to the CAUV journal entry, Johnson raises an issue of law that we review de novo. *See Kinnear Rd. Redevelopment, L.L.C. v. Testa*, 151 Ohio St.3d 540, 2017-Ohio-8816, 90 N.E.3d 926, ¶ 14.

{¶ 15} As a starting point, we note that "unless the [commissioner's] rule is unreasonable or contrary to law, the Tax Commissioner must apply it as formulated." *Kroger Grocery & Baking Co. v. Glander*, 149 Ohio St. 120, 126, 77 N.E.2d 921 (1948), *overruled on other grounds*, *Fichtel & Sachs Industries, Inc. v. Wilkins*, 108 Ohio St.3d 106, 2006-Ohio-246, 841 N.E.2d 284. We agree with the

BTA's conclusion that Ohio Adm.Code 5703-25-34(E) does not support Johnson's claim of error.

{¶ 16} By their own terms, the provisions of Ohio Adm.Code 5703-25-34 apply to a county auditor's use of the unit-value table, not to the commissioner's adoption of the table. Division (A) of the rule addresses the auditor's determination as to whether property qualifies for CAUV treatment, and divisions (B), (C), and (D) prescribe the initial steps for appraising CAUV property using the unit-value table. County soil-survey maps are to be used to develop soil maps for each farm to be assessed. Ohio Adm.Code 5703-25-34(B). And as the BTA correctly recognized below, the division of labor between the tax commissioner and the auditor reflects "two distinct aspects" of "the process by which the value of land qualifying for CAUV is established." BTA No. 2016-814, 2020 WL 1274335, at *2. Generally, the tax commissioner's duty is to "direct and supervise the assessment for taxation of all real property" in the state, former R.C. 5715.01(A), whereas a county auditor's duty is to serve as the "assessor of all the real estate in the auditor's county for purposes of taxation," R.C. 5713.01(A).

{¶ 17} Ohio Adm.Code 5703-25-34(E) clearly applies to the *auditor*'s duties in making an assessment: it requires the auditor to contact the commissioner when "a particular soil type is not included" in the unit-value table, and then the commissioner may take further action. Accordingly, Ohio Adm.Code 5703-25-34(E) addresses a county auditor's duties when assessing CAUV property—not the duties of the tax commissioner—and the auditor's determinations may be reviewed by the county's board of revision if the affected taxpayer contests the assessment by filing a complaint under R.C. 5715.19(A).[2]

---

2. In his merit brief, Johnson details the factual background of his efforts to obtain relief through the county auditor. Those matters lie outside the record before us and, as the BTA correctly observed, the county auditor's assessment of the soil on Johnson's farmland lies beyond the scope of review in this case. Previously, Johnson raised arguments relating to soil drainage in connection

{¶ 18} We affirm the BTA's conclusion that Ohio Adm.Code 5703-25-34(E) does not apply in the context of Johnson's claim against the tax commissioner.

## D. The BTA correctly determined that the tax commissioner did not abuse his discretion

{¶ 19} In his second, third, and fourth claims of error, Johnson renews his argument, which was rejected by the BTA, that the tax commissioner abused his discretion by not adopting separate per-acre values for undrained versions of Crosby, Kokomo, and Patton soils. The BTA applied the abuse-of-discretion standard based on our holding in *Adams* that the rules vest discretionary authority in the tax commissioner in adopting CAUV tables and that such actions are not merely ministerial. BTA No. 2016-814, 2020 WL 1274335, at *3-4, citing *Adams*, 152 Ohio St.3d 207, 2017-Ohio-8853, 94 N.E.3d 539, at ¶ 28. Indeed, in analogous circumstances we have acknowledged the tax commissioner's "high degree of official judgment or discretion" in determining the manner in which he discharges his assigned duties. *Ashland Cty. Commrs. v. Ohio Dept. of Taxation*, 63 Ohio St.3d 648, 656, 590 N.E.2d 730 (1992); *see also State ex rel. Delaware Joint Vocational School Dist. Bd. of Edn. v. Testa*, 149 Ohio St.3d 634, 2017-Ohio-796, 76 N.E.3d 1190, ¶ 13. And when the BTA reviews a determination of the tax commissioner that involves the commissioner's exercise of a discretionary power conferred by statute, the BTA must apply the abuse-of-discretion standard. *See J.M. Smucker, L.L.C. v. Levin*, 113 Ohio St.3d 337, 2007-Ohio-2073, 865 N.E.2d 866, ¶ 16.

{¶ 20} Two well-settled principles apply to our review in this context. First, "it is not the role of this court to substitute its judgment for that" of the commissioner, absent a finding of "unreasonableness, arbitrariness, or

---

with the tax-year-2010 assessment of his farmland. *See Johnson v. Clark Cty. Bd. of Revision*, 2d Dist. Clark No. 2013 CA 32, 2014-Ohio-329.

unconscionability." *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, ¶ 9; *see also Renacci v. Testa*, 148 Ohio St.3d 470, 2016-Ohio-3394, 71 N.E.3d 962, ¶ 32 ("Abuse of discretion connotes an unreasonable, arbitrary, or unconscionable attitude"). Second, the tax commissioner's determinations when adopting a unit-value table are "presumed, in the absence of proof to the contrary, to be valid and to have been done in good faith and in the exercise of sound judgment." *Wheeling Steel Corp. v. Evatt*, 143 Ohio St. 71, 54 N.E.2d 132 (1944), paragraph seven of the syllabus.

{¶ 21} At the hearing before the BTA, the tax commissioner's assistant administrator in charge of the CAUV program, Gloria Gardner, testified that the 2016 unit-value table generally follows the USDA's taxonomy of soils and that the taxonomy does not include drained and undrained Crosby, Kokomo, and Patton soils as separate soil types.

{¶ 22} Johnson contends that the tax commissioner abused his discretion by selectively departing from the USDA's taxonomy of soils. He bases that assertion on his cross-examination of Gardner, in which she conceded that Bulletin 685, which provides yield data for particular soils used to develop the unit-value tables, does not have separate listings for drained and undrained Adrian, Carlisle, and Linwood soils—and yet the 2016 unit-value table does distinguish between drained and undrained versions of those soils.

{¶ 23} We reject Johnson's argument for two reasons. First, the tax commissioner's admitted departure from *the bulletin* does not prove that the commissioner departed from *the USDA's soil taxonomy*. That is so because Gardner's testimony indicates that the soil types in the bulletin have been updated and that updating might account for any differential treatment of soil types— including drained and undrained variants—in the current unit-value table. Second, even if the CAUV journal entry did depart from the USDA's soil taxonomy, we must presume that the commissioner's decision to do so reflects his exercise of

sound judgment following his consultation with the agricultural advisory committee.

{¶ 24} Johnson further argues that the tax commissioner "excluded data for land lacking artificial drainage" with respect to Crosby, Kokomo, and Patton soil types. Johnson bases this argument on the drainage characterizations for those soil types set forth in the unit-value table and the explanation of drainage set forth in Bulletin 685. In the unit-value table, Crosby soil in its natural state is rated "somewhat poorly drained," Kokomo soil in its natural state is rated "very poorly drained," and Patton soil in its natural state is rated "poorly drained." The bulletin explains that with respect to soil types with "poorly drained" or "very poorly drained" ratings, "most crops cannot be grown" without artificial drainage. Additionally, the bulletin states that regarding "somewhat poorly drained" soils, "[w]etness markedly restricts the growth of crops unless artificial drainage is provided."

{¶ 25} Johnson's point may be illustrated by comparing the table's treatment of two soil types: Adrian and Kokomo. In the 2016 unit-value table, Adrian soil and Kokomo soil are both rated "very poorly drained," but only Adrian soil has separate unit-value entries based on drainage: $1,160 per acre for drained, and the minimum agricultural value of $350 per acre for undrained. By contrast, Kokomo soil has values of $3,970 and $3,690 per acre and the table does not distinguish between drained and undrained variants of the soil. Johnson maintains that the commissioner should recognize a value for undrained Kokomo soil—and he makes the same argument regarding two other soil types on his farmland—Crosby soil and Patton soil.

{¶ 26} Although those soil types in their natural states are rated as being somewhat poorly drained, poorly drained, or very poorly drained, and although relatively high per-acre values are assigned to those soil types through the 2016 CAUV journal entry, Gardner testified that the data regarding crop yields from the

10

soil types may have included yields from both drained and undrained soil types. The BTA found that this testimony was unrebutted, BTA No. 2016-814, 2020 WL 1274335, at *4, and we affirm the BTA's determination that the inferences Johnson draws from the differing drainage ratings, though perhaps plausible, do not rebut Gardner's testimony.[3]

{¶ 27} Furthermore, we question whether proof that the tax commissioner did not consider data regarding the soils from farmland lacking artificial drainage would establish an abuse of discretion. At the hearing before the BTA, Johnson admitted that the installation of artificial drainage on farmland is the norm— according to him, "probably 95 percent of the farms" in his county that have the Patton soil type have artificial drainage. Because Ohio Adm.Code 5703-25-33(A) calls for the commissioner to base the CAUV journal entry on "typical net income * * * *assuming typical management, cropping and land use patterns and yields* for a given type of soil" (emphasis added), the commissioner is justified in according little weight to atypical practices when preparing the journal entry.

{¶ 28} Finally, Johnson argues more broadly that by listing some soil types with drained and undrained variants, while listing other soil types without such variants, the tax commissioner abused his discretion. Johnson contends that the difference between artificially drained and undrained soil cannot be viewed as a question of differing management practices, and separate entries in the unit-value table are required for them because installing drainage tile involves additional capital investment.

---

3. At the hearing before the BTA, Johnson stated that he had subpoenaed a USDA soil specialist, but the specialist did not attend the hearing. According to Johnson, the specialist would have testified that "all of the somewhat poorly drained, poorly drained, and very poorly drained [soils] contained in the OSU bulletin report are for drained soils." Johnson has not set forth as error any alleged nonenforcement of his subpoena, and we do not consider the proffered evidence here. *See E. Liverpool v. Columbiana Cty. Budget Comm.*, 116 Ohio St.3d 1201, 2007-Ohio-5505, 876 N.E.2d 575, ¶ 9 (argument "never pressed" in the appellant's briefs deemed abandoned).

**{¶ 29}** We reject this argument. To repeat: the differential treatment of soil types reflects the exercise of judgment by the commissioner, which we presume to be sound. The possibility that the tax commissioner may have considered the investment required for artificial drainage for some soil types, but not for others, does not by itself prove that the commissioner abused his discretion.

**{¶ 30}** The record does not disclose the rationale for every consideration underlying the unit-value table, but it was not the commissioner's burden to demonstrate the reasonableness of the CAUV journal entry—it was Johnson's burden to show an arbitrary or unconscionable attitude on the part of the commissioner. He has not done so.

### III. CONCLUSION

**{¶ 31}** For the foregoing reasons, we affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

William S. Johnson, pro se.

Dave Yost, Attorney General, and Raina Nahra Boulos and Kimberly Allison, Assistant Attorneys General, for appellee.

_____