[Cite as *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 2022-Ohio-355.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Columbus City Schools Board of Education, | : | |
| | : | |
| Appellant-Appellant, | : | No. 21AP-86 |
| | : | (B.T.A. No. 2019-393) |
| v. | : | |
| | : | (REGULAR CALENDAR) |
| Franklin County Board of Revision et al., | : | |
| Appellees-Appellees. | : | |
| | : | |
| Columbus City Schools Board of Education, | : | |
| | : | |
| Appellant-Appellant, | : | No. 21AP-87 |
| | | (B.T.A. No. 2019-394) |
| v. | : | |
| | : | (REGULAR CALENDAR) |
| Franklin County Board of Revision et al., | : | |
| Appellees-Appellees. | : | |
| Columbus City Schools Board of Education, | : | |
| | : | |
| Appellant-Appellant, | : | No. 21AP-88 |
| | : | (B.T.A. No. 2019-461) |
| v. | : | |
| | : | (REGULAR CALENDAR) |
| Franklin County Board of Revision et al., | : | |
| Appellees-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on February 8, 2022

**On brief:** *Rich & Gillis Law Group, LLC, Mark H. Gillis*, and *Kelley A. Gorry*, for appellant. **Argued:** *Kelley A. Gorry.*

**On brief:** *Vorys, Sater, Seymour and Pease LLP*, *Nicholas M.J. Ray*, and *Lauren M. Johnson*, for appellees Aston Place Acquisition, LLC and Abigail Acquisition, LLC. **Argued:** *Lauren M. Johnson.*

APPEALS from the Ohio Board of Tax Appeals

DORRIAN, J.

{¶ 1}    Appellant, Columbus City Schools Board of Education ("BOE") appeals from two decisions and orders ("decisions") of the Ohio Board of Tax Appeals ("BTA") that increased the value of two properties in Franklin County owned by appellees, Aston Place Acquisition, LLC and Abigail Acquisition, LLC.  Although the BTA adopted the total values for both properties as determined by the BOE appraiser, the BTA rejected the distribution of value between the land and improvements as determined by the appraiser and instead adopted the land and improvements values for the properties consistent with the original distributions of the Franklin County Auditor ("auditor"). For the following reasons, we reverse.

**I. Facts and Procedural History**

{¶ 2}    In this matter, the BOE sought increases on the value of two properties owned by appellees in Franklin County located at 111 W. Third Avenue ("the Aston property") and 369 S. Gay Street ("the Abigail property"). The following facts are not disputed. The Aston property is a 59-unit apartment complex with improvements on 0.89 acres. The Aston property was constructed in 2013 and is subject to a 100 percent tax abatement for the value of vertical improvements for a period of 15 years.  The auditor assigned the Aston property a total value of $8,450,000, assigning $775,400 for the land and $7,674,600 for improvements for tax year 2017.  The Abigail property is a 69-unit apartment complex with improvements on 0.292 acres. The Abigail property was constructed in 2011 and is subject to a 100 percent tax abatement for the value of vertical improvements for a period of up to 15 years.  The auditor assigned the Abigail property a total value of $6,825,000, assigning $651,900 for the land and $6,173,100 for improvements for tax year 2017.

{¶ 3}    On March 29, 2018, the BOE filed two complaints pursuant to R.C. 5715.19 with the Franklin County Board of Revision ("BOR") seeking a $971,240 increase in the taxable value of the Abigail property and a $1,942,490 increase in the taxable value of the

Aston property. Appellees did not file countercomplaints. The complaints were heard before the BOR on February 5, 2019.  At the hearing, the BOE presented the testimony of Thomas D. Sprout, MAI, CPA, and appraisal reports for both properties, which were prepared by Sprout and Brian W. Barnes, MAI.[1]  As reflected in the appraisal reports, Sprout testified that he applied the income and sales comparison approaches to value and concluded that the Aston property had a total value of $11,800,000, assigning $1,750,000 for the land, $175,000 for furniture, fixtures, and equipment ("FF&E"), and $9,875,000 for improvements. Applying the same methodology, Sprout concluded the Abigail property had a total value of $8,165,000, assigning $1,020,000 for the land, $69,000 for FF&E, and $7,076,000 for improvements.  Both appraisal reports specified they were prepared to estimate the value of the properties for ad valorem taxes as of the tax lien date of January 1, 2017. Appellees did not present evidence or testimony at the hearing, but instead cross-examined Sprout.

{¶ 4}  On March 19, 2019, the BOR issued two written decisions on the two properties following oral decisions issued March 14, 2019. With regard to the Aston property, the BOR found the fair market value for tax lien date January 1, 2017 and 2018 to be $8,450,000, reflecting no change from the value assigned by the auditor.  With regard to the Abigail property, the BOR found the fair market value for tax lien date January 1, 2017 and 2018 to be $7,193,100, reflecting an increase of $369,100 from the value assigned by the auditor.  On March 26, 2019, the BOE filed notices of appeal from the BOR's March 19, 2019 decisions for both properties.  On April 17, 2019, Abigail Acquisition, LLC, filed an appeal from the BOR's March 19, 2019 decision on the Abigail property.

{¶ 5}  In a motion dated April 25, 2019, Abigail Acquisition, LLC moved to consolidate the cases on the Aston property and the Abigail property before the BTA because "[t]he appeals involve common questions of law and fact in that 1) the parties in each appeal are identical and 2) the cases involve the valuation of the same property for identical tax years." (Mot. to Consolidate at 1.)  On April 25, 2019, the BTA granted the motion to consolidate the cases.  Both the BOE and appellees waived hearing before the BTA and submitted the case on written briefs.

---

[1] We noted that the values provided by Sprout in his appraisal reports differed from the increases originally sought by the BOE in its complaints.

{¶ 6}    On February 1, 2021, the BTA issued a decision regarding the Abigail property in which it adopted Sprout's total value for the Abigail property of $8,165,000 and his value of FF&E of $69,000. However, the BTA disagreed with Sprout's determination of the value of the land and improvements and instead assigned the value between the land and improvements consistent with the auditor's initial valuation, resulting in a land value of $773,300 and improvements value of $7,322,700. On February 17, 2021, the BTA issued a decision regarding the Aston property in which it adopted Sprout's total value for the Aston property of $11,800,000 and his value of FF&E of $175,000.  However, the BTA disagreed with Sprout's determination of the value of the land and improvements and instead assigned the value between the land and improvements consistent with the auditor's initial valuation, resulting in a land value of $1,066,750 and improvements value of $10,558,250.

{¶ 7}    The BOE filed a motion for reconsideration of the BTA's February 1, 2021 decision on the Abigail property.  On March 1, 2021, the BTA issued its decision denying the BOE's motion for reconsideration.

## II. Assignments of Error

{¶ 8}    The BOE appeals and assigns the following 14 errors for our review:

[I.] The BTA erred in rejecting the land valuation of the Board of Education's appraiser for the subject property because the appraiser valued the land as if it was vacant.

[II.] The BTA erred in holding that improved land cannot be valued as if it was vacant for the purposes of ad valorem real property taxation.

[III.] The BTA committed reversible legal error in interpreting its holding in *Milanov v. Franklin Cty. Bd. of Revision*, BTA Case Nos. 2016-1936 et al., 2018 Ohio Tax LEXIS 1101 (May 11, 2018) as being applicable to the instant matter.

[IV.] The BTA erred in holding that in *Milanov*, it "disregarded dueling appraisal reports that valued land improved with condominiums subject to a tax abatement because they valued the land as unimproved vacant land."

[V.] The BTA erred in failing to recognize that *Milanov* involved land that had been platted and subdivided into separate residential condominium units pursuant to R.C. Chapter 5311 Whereas the subject property is an unsubdivided single parcel of land improved with an apartment complex.

[VI.] The BTA committed reversible legal error in applying Milanov and holding that the Board of Education's appraisal applied a "bulk discount" to the valuation of the subject land in violation of R.C. 5311.11.

[VII.] The BTA committed reversible legal error in applying Milanov and holding that the Board of Education's appraisal violated the Supreme Court's decisions in *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 212, 2014-Ohio-1940, 111 N.E.3d 222 ("*East Bank II*") and *Columbus City Schools Ba. of Edn. v. Franklin Cty. Bd. of Revision*, 148 Ohio St.3d 700, 2016-Ohio-8375, 72 N.E.3d 637 ("*Metro Partners*").

[VIII.] The BTA's holding that improved land cannot be valued as if it was unimproved directly violates the directives set forth in the Ohio Administrative Code ("O.A.C."), Section 5703-25-11, since those directives require the valuation of land as if vacant and at its highest and-best-use. O.A.C. 5703-25-11(A), (C).

[IX.] The BTA erred in failing to recognize that the Ohio Administrative Code's directives for the valuation of land for ad valorem real property taxation follows general appraisal principles for the valuation of land as "[e]ven if a site is already improved, the site is valued as though vacant and available for development to its highest and best use." Appraisal of Real Estate (14th Ed. 2013) at p. 362.

[X.] The BTA's holding violates the Supreme Court's decision in *Polaris Amphitheater Concerts, Inc. v. Delaware Cty. Bd. of Revision*, 118 Ohio St.3d 330, 2008-Ohio-2454, 889 N.E.2d 103, because the Court held that the BTA should value land consistent with the directives set forth in O.A.C. Sections 5703-25-07, 5703-25-11 and 5703-25-12. Id. at 11 17.

[XI.] The BTA's holding invalidates the cost approach to value any real property in Ohio as the critical first step in valuing property via the cost approach is to "[e]stimate the value of the site as though vacant and available to be developed at its highest and best use." Appraisal of Real Estate (14th Ed.2013) at p. 568.

[XII.] The BTA's holding violates the Supreme Court's decisions in *Dinner Bell Meats v. Cuyahoga Cty. Bd. of Revision*, 12 Ohio St.3d 270, 466 N.E.2d 909 (1984) and *Meijer, Inc. v. Montgomery Cty. Bd. of Revision*, 75 Ohio St.3d 181, 661 N.E.2d 1056 (1996) since the Court recognized that the cost approach is the most applicable valuation method for special purpose properties and newly constructed properties.

[XIII.] The BTA erred in rejecting the land valuation of the Board of Education's appraiser as it was the only competent and probative evidence of the subject's land value in the record.

[XIV.] The BTA erred in rejecting the land valuation of the Board of Education's appraiser as it affirmatively negated the Auditor's original value and the property owner failed to present any rebuttal evidence of the subject's land value.

For ease of discussion, we first consider the BOE's thirteenth and fourteenth assignments of error.

## III. Thirteenth and Fourteenth Assignments of Error

{¶ 9}   In its thirteenth and fourteenth assignments of error, the BOE asserts the BTA erred in adopting the auditor's original land values for the properties. The BOE asserts the BTA's decisions were an abuse of discretion because Sprout's appraisals affirmatively rebutted the auditor's values and no contrary evidence was presented.

### A. Applicable Law

{¶ 10} Article XII, Section 2 of the Ohio Constitution provides that "[l]and and improvements thereon shall be taxed by uniform rule according to value." County auditors are required to appraise real property "at its true value in money."  R.C. 5713.01(B). R.C. 5713.03 governs the determination of the true value of real property. *Gallick v. Franklin Cty. Bd. of Revision*, 10th Dist. No. 15AP-182, 2018-Ohio-818, ¶ 26. " '[T]he value or true value in money of real property' refers to 'the amount for which that property would sell on the open market by a willing seller to a willing buyer * * *, *i.e.*, the sales price.' " *Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 527, 2017-Ohio-4415, ¶ 9, quoting *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 175 Ohio St. 410, 412 (1964).  Generally, Ohio determines real property's true value "by determining, as a first step, the property's fair market value at its highest and best use."  *Johnson v. McClain*, 164 Ohio St.3d 379, 2021-Ohio-1664, ¶ 7.

{¶ 11} Several Ohio Administrative Code provisions governing the determination of the true value of property are relevant to the instant matter.  Ohio Adm.Code 5703-25-07(B) provides in pertinent part that "[i]t shall be the duty of the county auditor to so value and appraise the land and improvements to land that when the two separate values for land and improvements are added together, the resulting value indicates the true value in money of the entire property."  Ohio Adm.Code 5703-25-11, which provides rules for the valuation

of land, provides that land may be valued by "four principal methods" including the following:

> (1) The preferred method is the market data or comparative process requiring the collection and analysis of actual arms-length sales and other market information on comparable sites made within a reasonable time of the date of the appraisal with adjustments for variations. This method should be used except in unusual circumstances.
>
> (2) The allocation method in which the land value is estimated by subtracting the value of the improvements from a known sale price. This is primarily used in an area where there are very few sales of vacant land and the improvements to land are of a generally uniform type.
>
> (3) The land residual method estimates land value by capitalizing the residual income imputable to land as derived from actual or hypothetical new improvements assuming highest and best use. This method is useful in arriving at land value when there are few or no sales or as a check against the market approach.
>
> (4) The development method can be used in valuing land ready for development by estimating value as fully developed and subtracting the development, administrative and entrepreneurial costs.

Ohio Adm.Code 5703-25-11(C).  Ohio Adm.Code 5703-25-12(A) provides in pertinent part that "[t]he true value of improvements may be determined by either the market data, income or cost approach.  Regardless of the approach used the total of the depreciated value of the improvements to land and the 'true value' of the land should be the 'true value' of the property as a whole."  Furthermore, Ohio Adm.Code 5703-25-12(A) provides:

> In arriving at the value of the depreciated improvements by the market data approach the value of the entire property is estimated by the use of comparable sales after allowing for variations. The land value determined according to rule 5703-25-11 of the Administrative Code is then subtracted to arrive at the value of the improvements in their present or depreciated condition.
>
> The building residual technique is used to estimate improvement values by the income approach. After land value is arrived at the value of the improvements is estimated by capitalizing the net income remaining after deduction for all expenses including interest on the land value.

{¶ 12} R.C. 5715.19(A)(1)(d) authorizes the filing of a complaint to challenge the "total valuation or assessment of any parcel that appears on the tax list." The complaint process under R.C. 5715.19 "invokes a board of revision's jurisdiction over the entire valuation and assessment of [a] parcel." *Licking Hts. Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 154 Ohio St.3d 157, 2018-Ohio-3255, ¶ 19. "The Board [of Revision] is not required to confine its determination to the value of land or the value of improvements at the request of a complaining party." *Zeller-401 FX TIC L.L.C. v. Franklin Cty. Bd. of Revision*, 10th Dist. No. 20AP-334, 2021-Ohio-1504, ¶ 16, citing *Licking Hts.* at ¶ 19.

{¶ 13} R.C. 5717.03(B) provides that "[i]n case of an appeal from a decision of a county board of revision, the board of tax appeals shall determine the taxable value of the property whose valuation or assessment by the county board of revision is complained of." "The BTA's statutory duty in an appeal from a board of revision is to determine value." *Licking Hts.* at ¶ 20, citing R.C. 5717.03(B). "A party appealing a board of revision's decision bears the burden of proving its right to the change in value sought and must present competent and probative evidence supporting the value asserted." *G&I IX 6840 Pontius, L.L.C. v. Franklin Cty. Bd. of Revision*, 10th Dist. No. 19AP-661, 2020-Ohio-4660, ¶ 24, citing *6800 Avery Rd., L.L.C. v. Franklin Cty. Bd. of Revision*, 10th Dist. No. 17AP-363, 2018-Ohio-822, ¶ 11. The Supreme Court of Ohio has stated that its "case law has repeatedly instructed the BTA to eschew a presumption of the validity of the BOR's value and instead to perform its own independent weighing of the evidence in the record." *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 151 Ohio St.3d 458, 2017-Ohio-5823, ¶ 7.

**B. Jurisdiction and Standard of Review**

{¶ 14} R.C. 5717.04 confers on this court jurisdiction over appeals from the BTA as follows: "Appeals from decisions of the board [of tax appeals] upon all other appeals or applications filed with and determined by the board shall be by appeal to the court of appeals for the county in which the property taxed is situated or in which the taxpayer resides." R.C. 5717.04 further sets forth our standard of review: "If upon hearing and consideration of such record and evidence the court decides that the decision of the board [of tax appeals] appealed from is reasonable and lawful it shall affirm the same, but if the court decides that such decision of the board is unreasonable or unlawful, the court shall

reverse and vacate the decision or modify it and enter final judgment in accordance with such modification."

{¶ 15} Thus, "[w]hen reviewing a BTA decision, we determine whether the decision is reasonable and lawful; if it is both, we must affirm." *NWD 300 Spring, L.L.C. v. Franklin Cty. Bd. of Revision*, 151 Ohio St.3d 193, 2017-Ohio-7579, ¶ 13. A judgment is unreasonable when "there is no sound reasoning process" to support such judgment. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

{¶ 16} We defer to the BTA's factual findings as long as they are supported by reliable and probative evidence in the record. *Corex Partners, L.L.C. v. Franklin Cty. Bd. of Revision*, 10th Dist. No. 19AP-322, 2020-Ohio-3865, ¶ 7, citing *Bd. of Edn. of the Westerville City Schools v. Franklin Cty. Bd. of Revision*, 146 Ohio St.3d 412, 2016-Ohio-1506, ¶ 26. *See Lowe's Home Ctrs., L.L.C. v. Brooklyn City Schools Bd. of Edn.*, 10th Dist. No. 19AP-179, 2020-Ohio-464, ¶ 13, quoting *Hercules Galion Prods., Inc. v. Bowers*, 171 Ohio St. 176 (1960) (stating that "neither this Court nor any appellate court designated by R.C. 5717.04 constitutes a ' "super" board of tax appeals' "); *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 151 Ohio St.3d 515, 2017-Ohio-8347, ¶ 11 (stating that reviewing courts "defer to [the BTA's] findings concerning the weight of evidence so long as they are supported by the record"). Appellate review of a BTA decision "is guided by the premise that ' "[t]he fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities." ' " *NWD 300 Spring* at ¶ 13, quoting *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, ¶ 17, quoting *Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52 (1968), syllabus. The BTA possesses "wide discretion in determining the weight to be given to the evidence and the credibility of the witnesses that come before it." *EOP-BP Tower* at ¶ 9. *See Sheffield Crossing Station, L.L.C. v. Lorain Cty. Bd. of Revision*, 10th Dist. No. 19AP-687, 2020-Ohio-6938, ¶ 3 (stating that "where the parties present competing appraisals, the BTA is vested with wide discretion in determining credibility of the witnesses and weighing the evidence before it").

{¶ 17} However, our review is plenary on questions of law. *Westerville City Schools* at ¶ 26, quoting *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino*, 93 Ohio St.3d 231, 232 (2001) (stating that a " 'court will not hesitate to reverse a BTA decision that is

based on an incorrect legal conclusion' "). In such cases, we apply a de novo standard of review. *Terraza 8* at ¶ 7.

### C. Analysis

{¶ 18} In this case, as to both properties, the BTA found Sprout's appraisal reports to be "competent, credible, and probative evidence of the subject property's value." (Abigail and Aston Decisions at 10.)[2] However, the BTA did not agree with Sprout's determination of the value of the land and improvements with regard to both properties. Specifically, the BTA stated that "[w]e agree that [Sprout's] land value is not reflective of the subject property's value as it existed on the tax lien date, as improved land, not as vacant land." (Decisions at 6-7.) In support of this determination, the BTA cited to its decision in *Milanov v. Franklin Cty. Bd. of Revision*, BTA No. 2016-1936, 2018 Ohio Tax LEXIS 1101 (May 11, 2018), in which it stated that it "disregarded dueling appraisal reports that valued land improved with condominiums subject to a tax abatement because they valued the land as unimproved vacant land." (Decisions at 6-7.) As a result, the BTA stated that "[w]e see no reason to stray from our prior decision in this matter and accord no weight to Sprout's conclusion of vacant land value." (Decisions at 6-7.) Furthermore, based on its rejection of Sprout's determination of the value of both properties' land and improvements, the BTA did not conduct an independent valuation of the value of the land and improvements. Rather, the BTA found it "appropriate to allocate value consistent with the [auditor's] initial valuation." (Abigail Decision at 10; Aston Decision at 11.) In support of this conclusion, the BTA cited to *FirstCal Indus. 2 Acquisitions, L.L.C. v. Franklin Cty. Bd. of Revision*, 125 Ohio St.3d 485, 2010-Ohio-1921, ¶ 31.

{¶ 19} In its motion for reconsideration of the BTA's decision on the Abigail property, the BOE argued that the BTA erred in applying *Milanov* to "hold[] that improved land cannot be valued as if it was vacant." (BOE Mot. for Recon. at 8.) In its decision on reconsideration on the Abigail property, the BTA stated that the "BOE overstates the potential impact of the Board's citation to *Milanov*. The Board weighed the evidence in this case and determined that Sprout's land valuation should be given no weight in the

---

[2] As noted in our discussion of the procedural history, although the cases were consolidated before the BTA, the BTA issued separate decisions for the two properties on different dates. However, the BTA employed identical language in much of the two decisions, and, as a result, any quotation from the decisions applies to both decisions unless otherwise noted.

allocation of value among land and building.  The Board did not hold, as the BOE claims, that improved land cannot be valued via the sales comparison approach as if vacant." (BTA Decision on Recon. at 2.)

{¶ 20} On appeal, the BOE asserts the BTA erred in adopting the auditor's original land values because Sprout's appraisal reports provided clear evidence negating the auditor's original land values. In support of this argument, the BOE points to the Supreme Court's decision in *Copley-Fairlawn City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision*, 147 Ohio St.3d 503, 2016-Ohio-1485.  Appellees respond that the BTA evaluated the evidence in the record and concluded that Sprout's appraisals failed to properly value the land component because the methodology failed to consider the valuation of the land component.

{¶ 21} In *Copley-Fairlawn*, the Supreme Court recognized a "category of cases in which 'the evidence presented to the board of revision or the BTA contradicts the auditor's determination in whole or in part'; in such cases, 'when no evidence has been adduced to support the auditor's valuation, the BTA may not simply revert to the auditor's determination.' " *Copley-Fairlawn* at ¶ 17, quoting *Dayton-Montgomery Cty. Port Auth. v. Montgomery Cty. Bd. of Revision*, 113 Ohio St.3d 281, 2007-Ohio-1948, ¶ 27. This category of cases is considered to be a " 'narrow exception' to the usual rule that the BTA is justified in retaining the county's valuation of the property when an appellant 'fails to sustain its burden of proof at the BTA.' " *Id.*, quoting *Colonial Village, Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 2009-Ohio-4975, ¶ 23-24. Under this exception, the BTA is under a legal duty "to determine whether the record as developed by the parties contain[s] sufficient evidence to permit an independent valuation of the property," and, if so, then the BTA is required to "perform such a valuation." *Colonial Village* at ¶ 25. The court construed these cases to hold that " '[w]hen confronted with * * * clear evidence negating the auditor's valuation,' the BTA 'act[s] unreasonably and unlawfully in adopting the auditor's valuation rather than determining the taxable value of the property.' " *Copley-Fairlawn* at ¶ 18, quoting *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 193, 2013-Ohio-4543, ¶ 26 ("*Dublin City Schools I*"), *reconsideration*

*granted in part*, 139 Ohio St.3d 212, 2014-Ohio-1940, ¶ 30 ("*Dublin City Schools II*").[3] The *Copley-Fairlawn* court noted the cases under this narrow exception bore similarities to another line of cases, first recognized in *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 115 Ohio St.3d 449, 2007-Ohio-5237:

> Pursuant to [the] rule [in *Bedford*], "when the board of revision has reduced the value of the property based on the owner's evidence, that value has been held to eclipse the auditor's original valuation" and the board of education as appellant before the BTA may not rely on the auditor's valuation as a default valuation. *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 140 Ohio St.3d 248, 2014-Ohio-3620, * * * ¶ 35. Instead, "the BOR's adopting a new value based on" the owner's evidence has the effect of " 'shift[ing] the burden of going forward with evidence to the board of education on appeal to the BTA.' " *Worthington City Schools* at ¶ 35, 41, quoting *Dublin City Schools I* at ¶ 16.

*Copley-Fairlawn* at ¶ 19.

{¶ 22} In *Copley-Fairlawn*, the property owner filed a complaint with the Summit County BOR seeking a decrease in valuation for the subject property and the local BOE filed a counter-complaint seeking retention of the Summit County auditor's valuation. The property owner filed an appraisal report in support of his complaint, but the appraiser was not present at the BOR hearing for cross-examination; the BOE did not submit any evidence. Upon a decision of the BOR reducing the value of the subject property, the BOE appealed to the BTA. The BTA issued a decision reversing the BOR and reinstating the auditor's initial valuation. The BTA held that the BOR's determination to reduce the value was " 'unsupported by competent and probative evidence.' " *Id.* at ¶ 13. The BTA stated that the BOR erred by relying on the appraisal submitted by the property owner because the appraisal "(1) was not authenticated at the hearing by its author, (2) had been prepared for refinancing purposes (rather than tax-assessment purposes), and (3) opined a value for six months prior to the tax-lien date." *Id.* Furthermore, the BTA "sweepingly characteriz[ed]" the evidence in the case "as the type that led to mere speculation on the part of the finder of fact," thereby "treat[ing] all the evidence presented at the BOR hearing as incompetent to support a determination of value." *Id.*

---

[3] We note that in *Dublin City Schools II*, the Supreme Court found that "portion of our prior decision" in which it held that "the BTA erred in reverting to the auditor's valuations * * * remains unchanged." *Id.* at ¶ 30.

{¶ 23} Based on the recognized exception contained in this limited category of cases, the *Copley-Fairlawn* court found that the BTA erred in reverting to the auditor's determination of value given the record before it and the determination of the BOR for two reasons, namely (1) the BTA's "sweeping rejection of the competency of the evidence to demonstrate the value of the property," and (2) the BTA's "failure to recognize that the evidence before the BOR negated the validity of the auditor's valuation, thereby making it improper to revert to the auditor's valuation." *Id.* at ¶ 16. Despite acknowledging the deficiencies in the property owner's evidence before the BOR, the Supreme Court noted that the undisputed testimony showed (1) "the preparation of the appraisal for a business purpose as well as its actual use for that purpose," (2) "the appraisal report is certified by a state-certified appraiser and member of the Appraisal Institute and his licensed, state-registered appraiser assistant," and (3) "the analysis of sale and rent comparables in the appraisal report is usable for purposes of determining the property's 2012 valuation." *Id.* at ¶ 25. Based on this, the court found "the appraisal furnished evidence that in conjunction with the testimony was competent, that negated the validity of the auditor's valuation, and that furnished an independent basis for valuing the property." *Id.* at ¶ 27. Therefore, the court held that "the present case falls into the exception identified by *Colonial Village* in that the evidence presented by the owner at the BOR both negates the validity of the auditor's valuation while also furnishing a basis for an independent determination of value by the BTA." *Copley-Fairlawn* at ¶ 29. As a result, the court reversed the BTA's decision and remanded for an independent determination of value by the BTA based on all the evidence set forth in the record.

{¶ 24} In *FirstCal*, two Franklin County school boards filed complaints seeking increases in value on five separate parcels that were listed on a conveyance-fee statement filed by the property owner, FirstCal. The FirstCal conveyance-fee statement included multiple properties in various counties of Ohio and in other states that were sold for a single sale price. The BOR and BTA "allocate[ed] the aggregate sale price for the Franklin County parcels to the individual parcels" by "assign[ing] to each parcel a share of the aggregate Franklin County sale price in proportion to that parcel's percentage of the aggregate amount of value that the auditor determined for all the parcels." *Id.* at ¶ 30. Thus, "[t]he

BOR and the BTA allocated * * * the relative value of the parcels to their aggregate value in accordance with the auditor's original assessments." *Id.* at ¶ 31.

{¶ 25} FirstCal challenged the allocation of the aggregate sale price for the Franklin County parcels to the individual parcels. The court noted that FirstCal's argument was "anomalous" in that it "embraces the auditor's original valuations as the most probative evidence of value," but then "disclaims the valuations' significance as to the relative value of the parcels to one another." *Id.* at ¶ 33. The court stated that "[a]lthough not rising to the level of a presumptively correct valuation, pursuant to *Colonial Village*, the auditor's initial determination of value for a given tax year possesses an increment of prima-facie probative force, and the percentages derived from those valuations are 'corroborating' in the absence of better evidence." *Id.* at ¶ 31. Therefore, the court found that "the proportion of each parcel's assigned value to the aggregate value of the parcels possesses the same increment of prima facie probative force." *Id.* The court stated that "FirstCal was free at the BOR and the BTA to rebut that probative force by presenting its own contrary evidence," but "[i]t did not do so." *Id.*

{¶ 26} Here, while we agree with the BTA that *FirstCal* is relevant to the present matter in a comparative sense, we find the reasoning of *FirstCal*, and, by extension *Colonial Village*, actually undercuts rather than supports the BTA's allocation of value consistent with the auditor's initial determination. We begin by noting that the facts in *FirstCal* are distinct from those in this case in several respects. First, *FirstCal* involved the allocation of an aggregate sale price to individual parcels, whereas this case involves the value of improvements and land for two separate properties. Second, and more importantly, in *FirstCal* the property owner did not present evidence to rebut the probative force of the auditor's initial allocation of value. Here, the BOE presented extensive evidence in the form of Sprout's appraisal reports and testimony regarding the value of the subject properties, specifically including the value of the land and improvements. Appellees did not present any evidence to the contrary, but instead "chose to rely upon its cross-examination of Sprout and argument challenging the probative value of the appraisal report[s]." (Decisions at 10.) As noted by the BTA in its decision, "a party's election to forego the presentation of valuation evidence and rely solely upon argument and cross-examination is not without risk." (Decisions at 10.)

{¶ 27} However, in spite of these notable factual differences, *FirstCal* bears some resemblance to this matter insofar as both cases involve the anomalous reliance in part on the auditor's initial valuation. *See FirstCal* at ¶ 33. Puzzlingly, the BTA in this case rejected the auditor's determination of total value, including the specific amounts for the properties' land and improvements, but sought to rely on the auditor's proportions of value for the land and improvements despite the presence of clear evidence negating such values. With regard to the presence of clear evidence negating the auditor's valuation and the absence of evidence supporting the auditor's valuation, this case bears resemblance to the *Copley-Fairlawn* category of cases.

{¶ 28} Here, as in *Copley-Fairlawn*, Sprout's appraisal reports furnished evidence that, when considered in conjunction with Sprout's testimony, negated the validity of the auditor's valuation in whole or in part, and furnished an independent basis for valuing the property. Nevertheless, despite finding Sprout's reports overall to be competent, credible, and probative evidence with regard to the total value of the subject properties that negated the auditor's initial valuation, the BTA rejected Sprout's conclusions as to the determination of the value of the land and improvements of the properties. The BTA stated in its decisions that Sprout's conclusions as to the land value of the properties were to be "accord[ed] no weight" because Sprout's "land value is not reflective of the subject property's value as it existed on the lien date, as improved land, not as vacant land." (Decisions at 6-7.) However, on reconsideration in the Abigail property case, the BTA stated that it "did not hold * * * that improved land cannot be valued via the sales comparison approach as if vacant," but rather that the BTA "weighed the evidence in this case and determined that Sprout's land valuation should be given no weight in the allocation of value among land and building." (BTA Decision on Recon. at 2.) Thus, based on its decision on reconsideration, it appears the BTA did not reject Sprout's determination of the value of the land and improvements because of his use of the sales comparison methodology. Left unsaid is the basis for the BTA's decision to give no weight to Sprout's analysis of the value of the properties' land and improvements.

{¶ 29} Notably, this case presents even stronger evidence in favor of negating the auditor's initial valuation than was present in *Copley-Fairlawn*. Specifically, the appraisal reports in this case were authenticated at the BOR hearing by its author, were prepared for

tax assessment purposes, and opined a value as of the tax lien date. Furthermore, the BTA's reliance on Sprout's appraisal reports in adopting Sprout's overall conclusions of the value of the Aston and Abigail properties is arguably more demonstrative of the evidence negating the auditor's initial valuation than in *Copley-Fairlawn*, in which the BTA's decision constituted a "sweeping rejection of the evidence presented." *Id.* at ¶ 20.

{¶ 30} Based on the clear evidence negating the auditor's valuation, the absence of other evidence in support of the auditor's valuation, the BTA's contradictory statements regarding its rationale for rejecting Sprout's determination of the value of the properties' land and improvements, the absence of other supporting reasons in its decisions, and considering the BTA's adoption of the total values reached by Sprout after having found his appraisal reports to be competent, credible, and probative evidence of the subject property's value, we find the BTA's decision was unreasonable and unlawful under *Copley-Fairlawn* as to the determination of the value of the land and improvements of the subject properties. Because the BOE's evidence, in the form of Sprout's appraisals, contradicts the auditor's determination in whole or in part and no evidence was presented to support the auditor's valuation, the BTA was under a "legal duty" to conduct "an independent valuation of the property." *Colonial Village* at ¶ 25. By adopting the auditor's original allocation of value without conducting its own independent valuation, the BTA violated that legal duty. As a result, we must reverse and remand for the BTA to conduct an independent determination of value based on all the evidence set forth in the record. *Copley-Fairlawn* at ¶ 31.

{¶ 31} Accordingly, we sustain the BOE's thirteenth and fourteenth assignments of error.

## IV. Remaining Assignments of Error

{¶ 32} Having sustained the BOE's thirteenth and fourteenth assignments of error, thereby necessitating we remand these matters to the BTA for further proceedings, the BOE's remaining assignments of error are rendered moot.

## V. Conclusion

{¶ 33} Having sustained the BOE's thirteenth and fourteenth assignments of error, rendering  the remaining assignments one through twelve moot, we reverse the decisions

and orders of the BTA and remand these matters to the BTA for further proceedings consistent with law and this decision.

*Judgments reversed;*
*causes remanded.*

LUPER SCHUSTER, P.J., and MENTEL, J., concur.

———————————